UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BARBARA J. KIDD                                                                 PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:13CV962 DPJ-FKB

MERIDIAN PUBLIC SCHOOL DISTRICT                                       DEFENDANT

ORDER

This employment-discrimination action is before the Court on motion of Defendant

Meridian Public School District for summary judgment pursuant to Federal Rule of Civil

Procedure 56.  Plaintiff Barbara J. Kidd has responded in opposition.  The Court, having

considered the memoranda, submissions, and pertinent authorities, finds that Defendant's motion

should be granted.

I.        Facts and Procedural History

Plaintiff Barbara Kidd, a black female born in 1955, has a history of employment with the

Meridian Public School District dating back to 1999.  She served as the public relations director

of the District from 1999 until her employment was terminated in 2000.  The position remained

unoccupied until Kidd resumed the duties from 2009 to 2010, when the District again terminated

her employment.  Both times Kidd was laid off, she was informed that it was for budgetary

reasons.

The position remained vacant during the 2010 school year, but the District decided to

reopen the position in 2011 and advertised the vacancy.  Kidd once again applied for the public-

relations specialist position, but this time the District selected Elizabeth McDonald, a white

female born in 1983.  Believing that she was the superior candidate, Kidd lodged a complaint

with the Equal Employment Opportunity Commission (EEOC) and filed this suit, alleging that

race and age discrimination influenced the District's decision in violation of Title VII and the

Age Discrimination in Employment Act (ADEA).  In addition, Kidd makes a vague allegation

that the District's failure to hire her violated its own policies and procedures, affording her relief

under 42 U.S.C. § 1983.  Finally, Kidd also claims that her 2010 lay off was based on

discriminatory reasons, not financial constraints.

The District moved for summary judgment as to all claims.  Plaintiff filed a response, but

as explained in further detail below, her response is heavy on law and slim on facts, evidence,

citations to the record, and legal analysis.  Nevertheless, the Court has endeavored to consider the

record as a whole and concludes that summary judgment is appropriate.

II.      Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil

Procedure when evidence reveals no genuine dispute regarding any material fact and that the

moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

Significant here, the non-movant is required to "submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause[s] of action." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).  The non-movant must also "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). Although the Court endeavored to consider the record as a whole, to the extent it may have overlooked evidence Plaintiff failed to identify, the Court is under no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (citation omitted); *see also Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

The 2010 amendments to Rule 56 now make this clear.  Pursuant to Rule 56(c)(1), a party asserting that a fact "is genuinely disputed must support the assertion by:  (A) citing to *particular*

*parts* of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or

other materials." (emphasis added).  Moreover, Rule 56(c)(3) now states:  "Materials Not Cited.

The court need consider only the cited materials, but it may consider other materials in the

record."

III.     Analysis

Kidd challenges two employment actions in this suit—her lay off in 2010 and the

District's failure to hire her in 2011.

A.     Lay Off

Kidd contends that her lay off in 2010 was not due to budgetary cutbacks—as she was

told—but was in fact the result of discrimination.  Based on a review of Plaintiff's Complaint

and Response, it appears that she claims her dismissal was due to race discrimination in violation

of 42 U.S.C. § 1981.  *See* Pl.'s Comp. [1] ¶¶ 6, 31, 32, 33; Pl.'s Resp. [39] ¶ 4.  Section 1981

"protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make

and enforce contracts' without respect to race."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S.

470, 474–75 (2006) (brackets in original) (quoting 42 U.S.C. § 1981(a)).[1]

As an initial point, the District argues that the race claim is time-barred due to Kidd's

failure to file a charge of discrimination with the EEOC within 180 days of the alleged

discriminatory act.  But Kidd correctly points out that § 1981 claims are not subject to the

---

[1] It is not apparent from her Complaint whether Kidd also asserts that age discrimination led to her lay off.  Even assuming that she does, and further assuming that she can overcome the time-bar problem Defendant identified, such claim would still fail due to lack of proof of discriminatory motive.

exhaustion requirements applicable to Title VII claims. *Jones v. Robinson Prop. Grp., L.P.*, 427

F.3d 987, 992 (5th Cir. 2005). Apparently conceding the point, the District goes on to address

the merits of Kidd's allegation.

Section 1981 claims follow the same *McDonnell Douglas* burden-shifting scheme

applicable to Title VII claims. *McDonnell Douglas v. Green Corp.*, 411 U.S. 792 (1973); *see*

*Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 891 n.2 (5th Cir. 2010). To establish a prima facie

case of intentional discrimination in a reduction-in-force case, the plaintiff must show the

following: (1) she is a member of a protected group; (2) she was adversely affected by the

employer's decision; (3) she was qualified for another position at the time of discharge; and (4)

there is sufficient evidence, either circumstantial or direct, from which a fact finder may

reasonably conclude that the employer intended to discriminate in taking the adverse

employment action. *Okon v. Harris Cnty. Hosp. Dist.*, 426 F. App'x 312, 315 (5th Cir. 2011)

(citing *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996)). If the plaintiff

establishes a prima facie case, the burden shifts to the employer to offer a legitimate,

non-discriminatory reason for the employment action. *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259

(5th Cir. 2009). Finally, the burden shifts back to the plaintiff to show that the employer's

justification is merely pretext for discrimination. *Id.*

Though it is not apparent Kidd can make a prima facie case, assuming that she can, the

District has articulated its legitimate, non-discriminatory reason for its decision—the elimination

of the position for budgetary reasons. *See EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181

(5th Cir. 1996) (noting that a reduction in force is a legitimate, non-discriminatory reason for

discharge). Terry Larabee, the interim superintendent in place when the lay off occurred,

testified that beginning in 2009, "massive budget cuts" were felt throughout the State.  Larabee

Dep. at 21–23.  His chief financial officer predicted the District would be short approximately

one million dollars in funding.  *Id.*  The school board instructed Larabee to look for ways to cut

expenses, without interfering with classroom integrity and educational services.  *Id.* at 46.  He

explained that while he considered the public-relations position important, it was not essential.

*Id*. at 69.  So, he eliminated the position altogether.  *Id.* at 65.  It is undisputed the job remained

unfilled for the 2010–2011 school year.  When Dr. Alvin Taylor assumed the superintendent role

in 2011, he decided to reinstate the position.  The District has met its burden of production;

therefore, the burden shifts to Kidd to offer evidence of pretext.

Kidd lodges numerous complaints about the lay-off process used by the District, but she

has not directed the Court to any evidence suggesting *race discrimination* was at the heart of the

decision to dissolve her position.  Kidd claims there was no defined reduction-in-force plan and

thus, no selection criteria.  But the District points to its "Reduction in Force-Classified

Employees" procedure which is attached to Kidd's Response and lists several criteria for

consideration, including "[c]riticality of the position to the mission, goals, and objectives of the

school district."  Ex. 8 to Larabee Dep. [39-2] at 63 (Policy GCNA revised May 18, 2009).  This

policy is consistent with Larabee's testimony that he considered the public relations director an

important, but not essential position.

Kidd also avers that she was the only "contract" employee laid off, but she does not cite

to any evidence or provide the Court with information regarding other employees laid off (or

retained), their race, or their job duties.  *See Baumeister v. AIG Global Inv. Corp.*, 420 F. App'x

351, 355 (5th Cir. 2011) (noting that an absence of record evidence regarding qualifications of

retained employees made any comparison to the plaintiff "impossible").  And Larabee testified

that individuals in positions across the board were laid off, including several custodians, multiple

administrative office staff, a curriculum coordinator, and an associate principal.  *Id*. at 48, 53–54.

Again, he stressed that the goal was to cut expenses without interfering with classroom services.

*Id.*  As public relations director, Kidd was not in the classroom.[2]

Kidd has not raised a genuine issue of fact that racial animus played any role in

Superintendent Terry Larabee's decision to abolish the position.  In response to the District's

evidence, Kidd has offered only general accusations, speculation, and her own subjective belief

that she has been discriminated against.  These assertions are inadequate to overcome a summary

---

[2] Kidd also asserts that the District's affirmative-action guidelines applicable to a reduction-in-force were not followed, specifically the provision that "no practices create a discriminatory effect on racial or ethnic minorities, women, or individuals with handicaps." Resp. at 7.  The full policy Kidd is referring to states as follows:

> F.  Reduction, Involuntary Transfer, and Termination
> All policies pertaining to reduction of staff, involuntary transfer and termination shall be examined to ensure that no practice create a discriminatory effect on racial or ethnic minorities, women, or individuals with handicaps.  In all cases of reductions in force, involuntary transfer, or termination, *the overall goals established for the instructional program of the district shall be paramount*.

Pl.'s Resp. [39-2] at 56 (Policy Section GA- Personnel- All Employees, "GAAB") (emphasis added).  First, this statement does not prohibit laying off minorities, it merely states that any policy "shall be examined" to make sure it does not have a discriminatory effect.  Second, the full policy echoes Larabee's testimony that maintaining classroom integrity was paramount.  Finally, "'[a] defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact.'"  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (quoting *Upshaw v. Dallas Heart Grp.*, 961 F. Supp. 997, 1002 (N.D. Tex. 1997)).

judgment motion. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996));

*see Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 396 (5th Cir. 2012) (affirming

summary judgment where the plaintiff provided no evidence that discrimination motivated the

reduction-in-force decision); *Pryor v. MD Anderson Cancer Ctr.*, 495 F. App'x 544, 547 (5th

Cir. 2012) (affirming summary judgment where "[n]othing in the record suggests racial animus

on the part of [the employer]" in executing a reduction in force).

> B.     Failure to Hire

Kidd also alleges that when the District reinstated the public-relations position in 2011,

she was not selected due to her race and age in violation of Title VII and the ADEA. Title VII of

the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to

discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e–2(a)(1). Likewise, the Age Discrimination in Employment Act

(ADEA) prohibits discrimination in the workplace based on age and protects workers over the

age of 40. 29 U.S.C. §§ 623, 631. Both race and age-discrimination claims follow the

*McDonnell Douglas* burden-shifting analysis mentioned above.

The plaintiff must first establish a prima facie case of discrimination by showing (1) she

is a member of a protected class, (2) she was qualified for the position at issue, (3) she was not

selected, and (4) the position was filled by someone outside the protected class. *See Lee*, 574

F.3d at 259; *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001);

*see also McDonnell Douglas Corp.*, 411 U.S. at 802. Then the burden shifts to the employer to

offer a legitimate, non-discriminatory reason for the employment action. *Lee*, 574 F.3d at 259.

Once that burden is met, to prevail on a race discrimination claim, the plaintiff must offer evidence to show "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive alternative)." *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004). And though Kidd claims that her age was a motivating factor, the ADEA does not permit the mixed-motive alternative, so the plaintiff "must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *see also Davis v. Farmers Ins. Exch.*, 372 F. App'x 517, 519 (5th Cir. 2010).

Defendant concedes that Kidd can make a prima facie case of discrimination and moves on to produce its legitimate, non-discriminatory reasons for the hiring decision. The District submits the following four reasons for not hiring Kidd:  1) the quality of the work presented at her interview; 2) her experience; 3) her education; and 4) her attitude.

Dr. Alvin Taylor, who made the hiring decision, testified that the power point presentation Kidd delivered during her interview contained several errors. Kidd duplicated a slide, failed to capitalize all letters in MPSD, left out a space between words, and neglected to use a period in an acronym. Taylor Dep. [34-30] at 39–42. Dr. Taylor felt that a candidate should put her "best foot forward" in an interview. Taylor Dep. [34-33] at 37. And he expressed concern over having a public relations director who could release written materials to the public with errors. Taylor Dep. [34-27] at 71.

Dr. Taylor also stated that he wanted a candidate with experience managing a large marketing budget and preferred a degree in public relations with a marketing background. Taylor

Dep. [34-33] at 49; *see also* Def.'s EEOC Resp. [34-32] at 3.  Kidd did not posses either of these

credentials.  Her degree was in mass communications, and the bulk of her experience was in

television news, rather than public relations and marketing.  *See* Kidd's Application [34-28]

(listing 21 years of experience as news director of WTOK).

> As for Kidd's attitude, Dr. Taylor testified:

> A.      . . . [Kidd] was sending the message to me that I wouldn't have to worry
>         about, you know, directing her, you know, with, you know, she made some
>         comment about me being inexperienced, and that she – she'll be able to
>         handle her experience, her job.
> Q.      Now, wait, wait a minute.  Ms. Kidd said that you were inexperienced?
> A.      She did.
> . . .
> Q.      Wow!  That could be a death nail, couldn't it?
> A.      It could.  It was.

Taylor Dep. [34-33] at 35–36.  Dr. Taylor was, in fact, new to the district—and to the job of

superintendent—but explained that he was "looking for somebody to follow [his] vision of what

a Public Relations Director should be."  *Id.* at 38.  He added that he "had no interest whatsoever

in what she did in the past with the School District.  I was brought here to change the District.

Whatever the District was doing in the past failed horribly.  I had no interest whatsoever in

repeating what they had already done."  *Id.* at 81.  Also relevant to Kidd's attitude, Dr. Taylor

pointed out that she made a second remark during the interview about his youth, and he

confessed that he found her "condescending and—with a bit of arrogance."  *Id.* at 74.  Dr. Taylor

additionally expressed concern that Kidd had been unemployed for one year.  *Id.* at 32.

Dr. Taylor decided not to place Kidd in the position, and on May 2, 2011, the District

notified her of that decision.  Pl.'s Resp. [39-1].  After Kidd's interview and non-selection, the

District interviewed Elizabeth McDonald.  Dr. Taylor considered McDonald to be a better candidate than Kidd and offered her the job.

Kidd takes issue with the District's non-discriminatory reasons, complaining that it should have relied on objective criteria for its decision, rather than a subjective assessment.  But a subjective assessment of a candidate's performance in an interview may serve as a legitimate, non-discriminatory reason, if the employer articulates a clear and reasonably specific factual basis for its subjective opinion.  *See Joseph v. City of Dallas*, 277 F. App'x 436, 441 (5th Cir. 2008) (finding subjective interview evaluations were sufficient where a candidate for a police-officer position "provided poor answers to the hypothetical police scenarios and seemed unable to logically process information"); *Browning v. Sw. Research Inst.*, 288 F. App'x 170, 176–78 (5th Cir. 2008) (concluding that the defendant provided "clear and reasonably specific bases for [its] subjective assessments" where the plaintiff's performance evaluations "indicate[d], among other things, that she made gratuitous, negative comments about her colleagues; discussed internal [company] matters with clients; failed to follow [company] procedures; made an unauthorized business trip; failed to accurately report her time; and was reluctant to participate in certain [company] initiatives"); *Churchill v. Tex. Dep't of Criminal Justice*, 539 F. App'x 315, 318–19 (5th Cir. 2013) (concluding that defendant met burden of production where successful candidate's interview answers were "more thorough and more specific to the questions that were asked, [and] demonstrably more professional and focused than [the plaintiff's] and certainly more original").  The District has set forth specific reasons for not selecting Kidd and has therefore met its burden.

Because the District offered four non-discriminatory reasons for not selecting Kidd, the burden switches to Kidd to show that discrimination lay at the heart of the decision. She primarily attempts to meet this burden by arguing that she was clearly better qualified than McDonald. To do so, Kidd must present admissible evidence that would allow a jury to conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010) (citations and internal quotation marks omitted). "The bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 347 (5th Cir. 2001) (internal quotation marks omitted).

As mentioned, Kidd previously served as public relations director from May 1999 to June 2001, and again from September 2009 to June 2010. And she worked as director of communication for the Mississippi Association of Educators from February 2006 to September 2009. *See* Kidd Application [34-28]. So, Kidd had approximately six years of public relations/communications experience, almost three of which was with the District.

McDonald's qualifications are comparable. She likewise had approximately six years of experience working in marketing at a local bank—first as a marketing assistant, then as a marketing officer. *See* Pl.'s Resp., McDonald Application [39-3] (noting employment in marketing position from September 2005 to the time of application, which was May 2011). She also had experience in developing and managing large marketing budgets, a degree in public

relations with a minor in marketing, and had graduated magna cum laude from a large

university—qualities which fell in line with Dr. Taylor's stated preferences.  Taylor Dep. at 51;

Response to the EEOC [44-5] at 27.

Kidd insists that her credentials "jumped off the page" as compared to McDonald and

relies heavily on her prior experience with the District.  Pl.'s Resp. [40] at 6.  But "it is well-

established that better education, work experience and/or longer tenure with the [employer] does

not necessarily make a candidate clearly better qualified."  *Churchill*, 539 F. App'x at 322 (5th

Cir. 2013) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)).  Finally, Kidd

attempts to show that she was the better candidate by pointing out that she was the only applicant

who executed a power point presentation during the interview.  Even assuming that presentation

was error free—which it was not—the use of a power point by one candidate and not another is

not a disparity "of such weight and significance that no reasonable person, in the exercise of

impartial judgment, could have chosen" the candidate who did not employ a power point.

*Celestine*, 266 F.3d at 347.  Kidd has not shown that she was "clearly better qualified."

Aside from comparing the candidates, Kidd raises two additional arguments that the

Court will address.  First, she takes issue with the fact that different individuals made up the

interview panels for the two candidates.  Dr. Taylor explained that he was unable to compose the

same interview committee members due to scheduling and availability.  Taylor Dep. at 76.  Two

members—Amy Carter and Fred Thomas—participated in both interviews.  *Id.*  And Dr. Taylor

unequivocally stated that the final decision was his.  *Id.* at 68.  It is not apparent how these

undisputed facts demonstrate pretext.  Second, Kidd argues—without evidentiary support—that

McDonald submitted her application after the deadline.  But the District produced evidence that

McDonald submitted her application on March 29, 2011, well before the April 15, 2011 deadline. *See* Position Announcement [34-31]; McDonald Application [34-29].

To survive summary judgment, Kidd "must put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (emphasis added); *see also Sharkey v. Dixie Elec. Membership Corp.*, 262 F. App'x 598, 602 (5th Cir. 2008) (applying this test to failure-to-hire claim).  Simply put, she has not done that.  Kidd gives her subjective belief that her presentation was good, but does not substantively rebut the other issues the District considered in reaching its decision.  *See Wallace*, 271 F.3d at 221–22 (noting that the plaintiff presented evidence to rebut one of the employer's reasons, but not the second reason, and affirming judgment in favor of the employer).

The District was free to set its qualifications, to evaluate the relevance of Kidd's education and experience, and to choose among candidates who met the stated requirements, "provided the decision [was] not based upon unlawful criteria." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981).  The Court will not second-guess the District's judgment regarding the candidates' relative qualifications under such circumstances.  *See Manora v. Donahoe*, 439 F. App'x 352, 357 (5th Cir. 2011); *Deines v. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999).  Kidd has not presented evidence to suggest that the District's decision not to rehire her was based upon race or age.  She has therefore failed to establish either claim, and summary judgment is appropriate.[3]

---

[3]  It is not clear from Plaintiff's Response whether she is traveling under the pretext or mixed-motive theory in advancing her race claims.  The result would be the same under either theory.

C.      Other Claims

In Counts IV and V of her Complaint, Kidd makes vague references to a breach of the

District's policies and a violation of 42 U.S.C. § 1983.  Pl.'s Comp. [1] at 9.  First, it is not clear

what policies Plaintiff claims the District did not follow.  During discovery, Plaintiff identified

policy "GC" as the basis of her breach-of-policy claim.  Mot. [34-17].  According to the District,

this a actually a group of ten separate policies applicable to classified employees.  Plaintiff does

little to shed light on this claim in her Response, other than making references to policies GCNA

and GAAB—both of which are addressed in the discussion of Kidd's discriminatory lay-off

claim.  Pl.'s Resp. [39] at 23.

 Second, to the extent Plaintiff is arguing that a violation of internal policy is actionable

under § 1983, her argument is misplaced.   Generally speaking, § 1983 imposes liability on

governmental entities for a violations of federal law.  *See Sw. Bell Telephone, LB v. City of*

*Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (noting that § 1983 does not create substantive

rights, it merely provides a remedy for an underlying constitutional or statutory violation).  A

defendant's mere failure to follow its own policy, does not amount to constitutional violation.

*See generally, Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Hernandez v. Estelle*, 788

F.2d 1154, 1158 (5th Cir. 1986).

Third, even assuming Plaintiff could maintain a § 1983 claim, Kidd must prove that the

District "caused a constitutional tort through a policy statement, ordinance, regulation, or

decision officially adopted and promulgated by that body's officers," or that "the constitutional

deprivation is pursuant to a governmental custom, even if such custom has not received formal

approval." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (internal

quotation marks and citations omitted).  Thus, "municipal liability under [s]ection 1983 requires

proof of three elements:  a policymaker; an official policy; and a violation of constitutional rights

whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578

(5th Cir. 2001) (citation omitted).  Kidd has failed to identify these elements, and the Court is

under no "duty to sift through the record in search of evidence to support a party's opposition to

summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir.

2010) (citation omitted).

       Also, in her Response to the motion for summary judgment, Kidd references a class-of-

one claim for a violation of the Equal Protection Clause of the Fourteenth Amendment.

A class-of-one equal-protection claim will lie "where the plaintiff [shows] that [she] has been

intentionally treated differently from others similarly situated and that there is no rational basis

for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

This type of claim is not reflected in Plaintiff's Complaint, so it is not properly before the Court.

*See Cutrera v. Bd. of Sup'rs. of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim

which is not raised in the complaint but, rather, is raised only in response to a motion for

summary judgment is not properly before the court." (citation omitted)).  Moreover, the Equal

Protection Clause does not apply to the class-of-one theory in the context of public employment

disputes. *Enquist v. Or. Dept. of Agric.*, 553 U.S. 591, 609 (2008) ("[R]atifying a class-of-one

theory of equal protection in the context of public employment would impermissibly

'constitutionalize the employee grievance.' " (quoting *Connick v. Myers*, 461 U.S. 138, at 154

(1983))).

IV.     Conclusion

The Court has considered all arguments; those not addressed in this Order would not change the outcome.  Based on the foregoing, the Court finds Defendant's motion should be granted.  This action is dismissed with prejudice.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 56.

**SO ORDERED AND ADJUDGED** this the 9th day of June, 2014.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE